## A. W. SAUL *v.* ELIZABETH STURM.

## N. E. WEINBERG ET AL. *v.* ELIZABETH STURM.

*Bill In Equity—Multifariousness—Corporate Stock—Conflicting Claims—Fraud—Laches.*

In the case of a bill by the assignee of corporate stock, against persons claiming under a conflicting assignment, and against others asserting an attachment lien thereon under a claim against the assignor, there are sufficient grounds for uniting the causes of action, as required by General Equity Rule No. 30, since all the parties are interested in having the title to the stock adjudicated; and the bill is not multifarious.          p. 632

Equity has jurisdiction of a suit, by an assignee of corporate stock, based on a fraudulent alteration, in favor of certain defendants, of the assignment to plaintiff, even though, as against other defendants, claiming the stock under an attachment lien, plaintiff could have filed a claim of property in the attachment proceeding.          p. 632

That one entrusted to her son a certificate of stock, on which was endorsed an assignment to her of the stock, did not estop her from asserting the invalidity of an alteration, which the son made in the assignment, by inserting the names of additional assignees, to secure pre-existing claims in their favor against the son.          p. 633

An assignment executed on a stock certificate, without a transfer on the books of the corporation, vests the equitable ownership of the stock in the assignee.          pp. 633, 634

The assignee of corporate stock, asserting a fraudulent alteration of the assignment by the insertion of the names of others as assignees, was not guilty of laches because a year elapsed after the commission of the fraud before she instituted suit for relief, the certificate having remained in her custody, and the newly named assignees not having claimed any benefit under the changed assignment, and not appearing to have been prejudiced by the delay.          p. 634

*Decided January 14th, 1926.*

Appeals from the Circuit Court of Baltimore City (Sol-
ter, J.).

Bill by Elizabeth Sturm against A. W. Saul, N. E. Wein-
berg, Morris Sneider and others. From an order overruling
demurrers to the bill, said Saul, and said Weinberg and
Sneider, separately appeal. Affirmed.

The cause was argued before Bond, C. J., Urner, Adkins,
Offutt, Digges, Parke, and Walsh, JJ.

*Louis Hollander* and *Saul A. Harris,* submitting on brief,
for A. W. Saul, appellant.                                    •

*Michael Miller,* for N. E. Weinberg and Morris Sneider,
appellants.

*Bernard J. Medairy* and *Hugh A. Norman,* submitting
on brief, for Elizabeth Sturm, appellee.

Urner, J., delivered the opinion of the Court.

In June, 1923, the appellee received from her son, F.
Raymond Sturm, who was then president of the Baltimore
Acceptance Corporation, a certificate for one hundred shares
of its capital stock entered in his name on its records. En-
dorsed upon the certificate was a duly executed assignment
of the stock to the appellee from her son as the holder of
the record title. The transfer was made in consideration
of the execution and delivery to the son of a mortgage for
$3000 on property owned by the appellee and her husband,
since deceased, as tenants by the entireties. The mortgage
was used as collateral security for a loan which F. Raymond
Sturm obtained from the Baltimore Acceptance Corpora-
tion. Several months later he induced the appellee to let
him have possession of the stock certificate, upon the assur-
ance that he had an opportunity to sell the stock and that
he would pay her the proceeds. The stock was not sold, but
the certificate was sent back to the appellee by her son, after

he had wrongfully changed the assignment by reducing the
appellee's interest as assignee to only twenty-five shares, and
by including the names of Frank Darrow and A. W. Saul
as the assignees of fifty and twenty-five shares, respectively.
A letter from her son, accompanying the stock certificate
on its return to the appellee, stated, as his reason for making
the alteration in the assignment, that he was indebted to
Darrow and Saul and had adopted that method of satisfying
their claims. The appellee paid to the Baltimore Acceptance
Corporation her son's debt, for which the mortgage on her
property had been pledged, and she requested the corporation
to issue a new certificate to her upon surrender of the one
which she then held. In refusing this request, as she alleges,
the secretary of the corporation advised her to hold the
stock and not to have it transferred. Subsequently two of
the appellants, N. E. Weinberg and Morris Sneider, as cred-
itors of F. Raymond Sturm, who disappeared soon after
his alteration of the assignment on the certificate of stock,
sued out a foreign attachment and caused it to be laid in the
hands of the Baltimore Acceptance Corporation to bind the
stock referred to, which was still entered on the books of the
corporation in the name of their debtor. The pending suit
in equity was then brought by the appellee against the cor-
poration, Weinberg and Sneider, the attaching creditors, and
Darrow and Saul, whose names had been inserted in the
stock assignment. The omission to make the plaintiff's son
a party is explained by the fact of his disappearance.

The statement we have made as to the circumstances of the
case is founded upon the allegations of the bill of complaint.
It is the object of the bill to have the names of Darrow and
Saul stricken from the assignment, to procure the issuance
of a new certificate to the plaintiff in place of the one she
now holds, and meanwhile to restrain the prosecution of the
attachment suit. The Baltimore Acceptance Corporation
filed an answer to the bill, and the other defendants de-
murred. In its answer the corporation stated that it had
no knowledge of the alleged fraudulent change in the stock

assignment, but it did not dispute the right which the bill asserts. In support of the demurrers, it was asserted that the bill is multifarious, that it states a case devoid of equity, that it shows ground of estoppel to maintain the suit, and that the plaintiff has an adequate remedy at law. On behalf of Darrow and Saul it was further contended that the averments of the bill disclose laches on the part of the plaintiff in contesting the assignment alleged to be fraudulent. The demurrers were overruled, and the attaching creditors and one of the secondary assignees have appealed.

General Equity Rule, No. 30, contains a provision that "if there be more than one defendant, the liability must be one asserted against all of the material defendants, or sufficient grounds must appear for uniting the causes of action in order to promote the convenient administration of justice." It is clear that such grounds exist in the present case. In order that justice may be conveniently administered with respect to the property and transactions mentioned in the bill of complaint, the conflicting claims of the parties should be considered and determined in one proceeding. The subject of the suit is the ownership of corporate stock. There is a community of interest, on the part of the plaintiff and all of the defendants, in having the question of title to the stock adjudicated. While the determination of that issue depends upon the superiority of equities as between the rival assignees, it directly concerns also the lien which the attaching creditors have sought to acquire and enforce. The fraud described in the bill is a sufficient ground upon which the jurisdiction of a court of equity may be invoked and exercised for the decision of every question which the case presents. If the bill should be dismissed as to any of the parties, there would not be a complete representation of the various interests to be affected. If the appellee had filed a claim of property in the attachment proceeding, her right to the full ownership of the attached stock could not have been established without a decision as to the validity of the partial assignment to other persons who were not parties to

that action. For the reasons stated, the contentions that the bill is multifarious and that the plaintiff has an adequate remedy at law are not sustainable.

The bill is said to show a want of equity because of the fact, appearing from its allegations, that the plaintiff entrusted her son with the stock certificate and thus gave him the opportunity to make the assignments to Darrow and Saul which are sought to be vacated. It is urged that for this reason her rights should be subordinated to the interests of those assignees. But this theory disregards the fact that when the plaintiff confided the certificate to her son, it bore evidence of her ownership in the form of an executed and effective assignment. Its alteration by the insertion of the names of additional assignees without the plaintiff's consent is the specific fraud of which she complains. No actual or apparent authority was conferred upon her son to transfer an interest in the stock to any of his creditors. It does not appear that any payment was made or credit originally extended in the belief that he possessed such authority. The change was made for the alleged purpose of transferring the stock in part to the two designated creditors as security for their pre-existing claims. The certificate did not pass into their custody, but was returned to the plaintiff and has since remained in her possession. As narrated in the bill of complaint, the facts of this case are quite different from those proved in the recent case of *Blum v. Apitz*, 149 Md. 91, on which the appellants rely. The principle of the decisions in *Taliaferro v. First National Bank*, 71 Md. 200, and *German Bank v. Renshaw*, 78 Md. 475, is more appropriate to the case now presented. In those cases certain bonds and stocks, which had been assigned in blank by the owners for the purpose of sale, as expressed in the assignments, were pledged by the owners' agents as collateral security for their own debts, and it was held that such transfers were ineffectual because they exceeded the agents' authority, as to which the pledgees, in view of the assignments, were chargeable with notice. The effect of the assignment

executed on the stock certificate involved in this case was to vest the equitable ownership of the stock in the plaintiff, without a transfer on the books of the corporation. *Kerr v. Urie,* 86 Md. 72; *Bloede Co. v. Bloede,* 84 Md. 129. The possession of the certificate by her son was no indication that her interest as the assignee of the stock had been relinquished or that he was authorized to use it for his individual purposes. A formal re-assignment would have been necessary to re-invest the son with the title to the stock. Under the circumstances alleged, it is just and equitable that the plaintiff's rights as the real owner of the stock should be protected and enforced as against the hypothecation which her son wrongfully attempted. The considerations which support the conclusion that there is sufficient equity shown by the bill, equally justify a decision that it does not disclose any ground of estoppel.

The defense of laches is not tenable upon the pleaded facts. There was an interval of a year between the commission of the alleged fraud and the institution of this suit, but as the stock certificate remained in the plaintiff's custody, and the newly named assignees do not appear to have made any effort to claim the benefit of the changed assignment, there is no reason to believe that they were prejudiced because their interests were not more promptly contested. It is not suggested by the attaching creditors that there was any laches by the plaintiff in filing the bill, so far as their rights are concerned.

The demurrers were properly overruled with leave to answer.

*Order affirmed, with costs, and case remanded.*